**Kathleen RAFFERTY, Appellant,**

v.

**Harold FINSTAD, Appellee.**

No. 01–93–01079–CV.

Court of Appeals of Texas, Houston (First Dist.).

May 18, 1995.

Rehearing Overruled July 20, 1995.

Shawn Casey, Houston, for appellant.

Robert Piro, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a final divorce decree entered on August 12, 1993, after a trial to the bench. The divorce was filed by the appellee, Harold Finstad. Appellant, Kathleen Rafferty, cross-filed for divorce. Kathleen appeals the trial court's division of the community property and the trial court's refusal to enforce certain agreed temporary orders. We affirm.

### Background

The parties had been married for 12 years when Harold filed for divorce on the grounds of insupportability. Kathleen cross-filed, alleging insupportability and cruelty. After a bench trial, the court granted Harold a divorce based on insupportability, and divided the community estate. At Kathleen's request, the trial court made findings of fact and conclusions of law. Kathleen then timely requested additional findings of fact and conclusions of law, which the trial court failed to make. In five points of error, Kathleen challenges (1) the court's failure to file additional findings of fact and conclusions of law; (2) the court's failure to grant Kathleen reimbursement for allegedly fraudulent transfers by Harold; (3) the legal and factual sufficiency of the evidence supporting the trial court's partition; (4) the court's dissolution of an agreed temporary injunction; and (5) the trial court's failure to grant Kathleen a hearing on her motion for contempt.

### First point of error

The court made the following findings of fact:

1. The residency requirements of the Family Code have been met.

2. There is discord and a conflict of personalities such as to make further living together insupportable.

3. No children were born of this marriage and none is expected.

4. Petitioner brought separate property into the marriage which, while he was unable to trace it into existing assets, was used by the parties during the marriage.

5. Gambling was part of the life style [sic] of the parties both before their marriage and thereafter.

6. The earnings of the Respondent from her employment as a nurse were converted to cash and the use of that cash by the Respondent was not satisfactorily explained.

The trial court also made the following conclusions of law:

1. The equitable claims for reimbursement of both parties were taken into account and considered.

2. The property division was based on the evidence and such permissible factors as the evidence raised and is fair and equitable to both parties.

Kathleen requested 21 additional findings of fact and eight additional conclusions of law, all of which the trial court declined to make. In her first point of error, Kathleen argues that the trial court erred when it failed to make these additional findings and conclusions.

Kathleen's proposed findings seven through 15, 17, 18, 24, and 25 requested that

the court recognize specific transfers by Harold. Proposed finding number 16 was that Kathleen invested her separate property in the parties' prior residence. Proposed finding number 19 was that Harold's earning capacity was four times that of Kathleen. Proposed findings 20 through 23 related to the temporary orders, and proposed findings 26 and 27 addressed Harold's cruel treatment toward Kathleen.

Kathleen's proposed conclusions of law three through seven state that Kathleen was not entitled to reimbursement for community funds paid by Harold, or for separate funds used by Kathleen to purchase the parties' prior residence. Proposed conclusion number eight states that Kathleen was not entitled to a hearing on her motion for enforcement of the temporary orders. Proposed conclusions numbers nine and 10 state that Kathleen was not entitled to a disproportionate split of the community estate based on fraud or disparity of income.

TEX.R.CIV.P. 298 requires additional findings of fact and conclusions of law only if they relate to "ultimate or controlling issues." *Associated Tel. Directory Publishers v. Five D's Publishing Co.*, 849 S.W.2d 894, 901 (Tex.App.—Austin 1993, no writ); *Dura-Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The trial court is not required to make findings that are unsupported in the record, that relate merely to evidentiary matters, or that are contrary to other previous findings. *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 791–92 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Dura-Stilts*, 697 S.W.2d at 661; *Wallace v. Wallace*, 623 S.W.2d 723, 724 (Tex.App.—Houston [1st Dist.] 1981, writ dism'd w.o.j.). If a party makes a request for additional findings and conclusions and the trial court fails to make such findings, its failure is tantamount to a refusal. *Stretcher v. Gregg*, 542 S.W.2d 954, 958 (Tex.Civ.App.—Texarkana 1976, no writ).

In a case of property division, the ultimate and controlling issue is whether the trial court divided the property in a "just and right manner" pursuant to TEX.FAM.CODE ANN. § 3.63 (Vernon 1993). *Finch v. Finch*,

825 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Carter v. Carter*, 736 S.W.2d 775, 781 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Lettieri v. Lettieri*, 654 S.W.2d 554, 557 (Tex.App.—Fort Worth 1983, writ dism'd w.o.j.). This Court has repeatedly held that the value of specific property is not an ultimate issue, and therefore need not be set out in findings of fact. *Finch*, 825 S.W.2d at 221; *Wallace*, 623 S.W.2d at 725. Similarly, issues such as whether Harold conveyed certain items of property, the relative earning capacities of the parties, whether Kathleen invested her separate property in the community residence, or whether Harold was cruel, were issues which the trial court was entitled to consider, but which were merely evidentiary and would not have determined the ultimate, controlling issue of whether the partition was "just and right." We overrule Kathleen's first point of error.

### Second point of error

In her second point of error, Kathleen challenges the trial court's failure to grant Kathleen reimbursement for funds that Kathleen alleges Harold dissipated in fraud of Kathleen's community property rights. The trial court has broad discretion in determining a just and right division, and on appeal, the trial court's division will be overturned only upon a clear showing of abuse. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Humble v. Humble*, 805 S.W.2d 558, 562–63 (Tex.App.—Beaumont 1991, writ denied). To put it differently, in reviewing the trial court's judgment for abuse of discretion, we must determine whether the trial court acted in an unreasonable or arbitrary manner. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

Kathleen failed to plead fraud below. *See* TEX.R.CIV.P. 94; *Adams v. Tri–Continental Leasing Corp.*, 713 S.W.2d 152, 153 (Tex. App.—Dallas 1986, no writ). Moreover, when Kathleen attempted to introduce evidence of fraud, Harold's objection was sustained, and Kathleen does not complain about this ruling on appeal. Thus, Kathleen has preserved nothing for review. The trial court's conclusions of law noted that the par-

ties' equitable claims for reimbursement had been considered. While Kathleen's motion for additional findings of fact requested that the trial court further explain how her reimbursement claim was factored into the final award, the court was not required to do so. See Dura-Stilts, 697 S.W.2d at 661. Finally, in the trial court's rendition of judgment, the judge addressed Harold's conveyances to his children, charging him with liability for any attorney's fees incurred in a lawsuit owned by the community. We overrule Kathleen's second point of error.

### Third point of error

Kathleen also challenges the legal and factual sufficiency of the evidence supporting the trial court's partition. Kathleen's position appears to be that she proved as a matter of law that she was entitled to a disproportionate share of the community estate, and that the court's partition was against the great weight of the evidence.

Although her point of error purports to challenge the sufficiency of the evidence, her argument actually challenges the court's discretion in dividing the community estate the way it did. Her point of error challenges findings of fact numbers 4, 5, and 6:

4. Petitioner brought separate property into the marriage which, while he was unable to trace it into existing assets, was used by the parties during the marriage.

5. Gambling was part of the life style [sic] of the parties both before their marriage and thereafter.

6. The earnings of the Respondent from her employment as a nurse were converted to cash and the use of that cash by the Respondent was not satisfactorily explained.

In her argument supporting this point of error, however, Kathleen claims that the trial court erred by failing to award her a disproportionate share of the community estate based on disparity of earning power, wasting of assets, gifts to or by a spouse during the marriage, and reimbursement. Kathleen's argument is more akin to an abuse of discretion challenge, and will be addressed accordingly.

■ The Texas Family Code gives the trial court wide discretion in dividing the community estate. Vallone v. Vallone, 644 S.W.2d 455, 460 (Tex.1982). We will not disturb the trial court's exercise of discretion without a clear showing of abuse. Patt v. Patt, 689 S.W.2d 505, 507 (Tex.App.—Houston [1st Dist.] 1985, no writ). The trial court's discretion is not boundless, however, and the property division must not be so disproportionate as to be inequitable. Smith v. Smith, 836 S.W.2d 688, 692 (Tex.App.— Houston [1st Dist.] 1992, no writ). It is not an abuse of discretion for a trial court to make an equal division of the property, even where the equities balance in favor of the wife. Humble, 805 S.W.2d at 563.

■ Based on the record as a whole, it appears that the trial court divided the property roughly equally. Of the major community assets, Kathleen was awarded the former community residence, valued between $120,000 and $130,000, while Harold was awarded another residence valued at between $75,000 and $92,000, a lot and motor home in Galveston valued at $15,000, and two lots on Canyon Lake, valued at $35,000. Kathleen was also awarded approximately $45,000 in cash from the two principal accounts, while Harold was awarded approximately $35,000.

Looking at all the evidence, we cannot say that the court clearly abused its discretion. Although Kathleen alleged fault in her cross-petition, the trial court granted the divorce on no-fault grounds, which Kathleen does not challenge. The evidence concerning Harold's alleged gifts to family members was hotly disputed, as was Kathleen's allegation that Harold wasted assets of the community estate. Whether Harold commingled his separate property with community property was disputed, and the trial judge specifically found that Kathleen was unable to account for $39,000 of her community earnings. Finally, as noted above, it is not an abuse of discretion to divide the estate equally despite the fact that the equities are in favor of Kathleen. Humble, 805 S.W.2d at 563. We overrule Kathleen's third point of error.

### Fourth and fifth points of error

Before trial, the court signed certain agreed temporary orders enjoining either party from dissipating the community estate. The final divorce decree revoked the agreed temporary orders and dissolved the injunction. In her fourth and fifth points of error, Kathleen challenges the trial court's *sua sponte* dissolution of the agreed temporary injunction and the court's failure to grant Kathleen a hearing on her motion for contempt.

■ Relying on *Turner v. Turner*, 47 Tex. Civ.App. 391, 105 S.W. 237 (1907), and *Bledsoe v. Wesley*, 22 S.W.2d 718, 720 (Tex.Civ. App.—Texarkana 1929, writ dism'd w.o.j.), Kathleen argues that it was reversible error for the trial court to dissolve the agreed temporary injunction *sua sponte*. *Turner* held that it is error for a trial court to dissolve a temporary injunction before the parties' rights have been adjudicated. *Turner*, 105 S.W. at 238. In that case, however, the trial court dissolved the injunction before the underlying divorce suit was adjudicated. *Id.* at 237. The court in *Turner* reversed the trial court in order to prevent the husband from dissipating the community estate "during the progress of the suit." *Id.* at 238. Here, in contrast, the temporary injunction was dissolved *after* the court had partitioned the estate. During the trial, Kathleen presented evidence concerning Harold's alleged violations of the temporary injunction. Kathleen has not shown, or even alleged, that the trial court did not take this evidence into account when it partitioned the community estate.

For the same reason, *Bledsoe* is inapplicable. There, the appellants challenged the trial court's dissolution of a temporary injunction. 22 S.W.2d at 719. The court of appeals held that

> if the allegations in [appellants'] petition, taken as true, as they should be, entitled them to relief by injunction, the court below did not have a right, on his own motion and without notice to them, and an opportunity to be heard about the matter, to dissolve the injunction he had granted.

*Id.* at 720. Here, however, the court did hear Kathleen's evidence concerning Harold's alleged violations. In the absence of evidence to the contrary, we will presume that the trial court either found the allegations meritless, or took this evidence into account when he divided the community estate.

■ Finally, even if the trial court had been of the opinion that Harold dissipated the community estate in violation of the temporary injunction, it would have been error for the court to hold Harold in contempt, because the divorce decree superseded the temporary orders. After the decree was entered, the temporary orders ceased to be "valid, subsisting orders." *Ex parte Grothe*, 581 S.W.2d 296, 297 (Tex.Civ.App.—Austin 1979, orig. proceeding). Therefore, we conclude that Kathleen suffered no harm as a result of the trial court's dissolution of the temporary injunction.

We overrule Kathleen's fourth and fifth points of error.

We affirm the judgment of the trial court.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent from point of error one and on that issue, I would reverse.

In point of error one, Kathleen Finstad argues that the trial court erred when it refused to make these additional findings and conclusions regarding valuation. She argues on appeal that she can receive no meaningful review of the facts based on the trial court's global findings and conclusions. I agree.

Kathleen went to trial on an amended petition for divorce in which she pled grounds of cruelty and asked that Harold reimburse her community estate for various assets that he transferred to his children by another marriage. Upon trial, evidence was received to support her various allegations. After trial, the court merely divided the property, and filed the findings of fact as set out on page two of the majority's opinion. The first three of those findings relate to issues that were not contested in the divorce (the parties met the residency requirements of the Fami-

ly Code; living together was insupportable; no children were born of the marriage). Only three of the findings have any relevance to the contested issues:

4. Petitioner [the husband] brought separate property into the marriage which, while he was unable to trace it into existing assets, was used by the parties during the marriage.

5. Gambling was part of the life style [sic] of the parties both before their marriage and thereafter.

6. The earnings of the Respondent from her employment as a nurse were converted to cash and the use of that cash by the Respondent was not satisfactorily explained.

Kathleen requested 21 additional findings of fact and eight additional conclusions of law, all of which the trial court declined to make. Kathleen's proposed findings seven through 15, 17, 18, 24, and 25 requested that the court recognize specific transfers by Harold Finstad to his children by an earlier marriage. Proposed finding number 16 was that Kathleen invested her separate property in the parties' residence. Proposed finding number 19 was that Harold's earning capacity was four times that of Kathleen. Proposed findings 20 through 23 related to the temporary orders, and proposed findings 26 and 27 addressed Harold's cruel treatment of her.

The majority overrules point of error one on the ground that the additional findings were merely evidentiary, not ultimate and controlling issues. Citing *Finch v. Finch,* 825 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ), the majority holds that the ultimate and controlling issue is whether the trial court divided the property in "a just and right manner." Citing *Finch* and *Wallace v. Wallace,* 623 S.W.2d 723, 725 (Tex. App.—Houston [1st Dist.] 1981, writ dism'd w.o.j.), the Court noted that we have "repeatedly" held the value of specific property

is not an ultimate issue. I agree we have. I disagree that we should continue.[1]

I recognize we held in *Finch* that it is not necessary for the trial court to make specific findings in a divorce on the characterization and value of the property. *Finch,* 825 S.W.2d at 221. Even though I was a member of that panel, I now believe that decision was wrong. In a case like this, with complicated complaints regarding the separate and community assets and claims of reimbursement, it is not possible to show error without specific findings. The trial court's scant findings are of no assistance to our review.

In a divorce such as this, before the trial court makes its decision on how to divide the community estate, the trial court must make at least three underlying decisions: (1) what is the character of the property (separate or community); (2) whether the community estate is entitled to reimbursement from either spouse; and (3) what is the value of the community property. The trial court makes those decisions based on three different of standards.

The decision on the character of the property is a constitutional issue. Tex. Const. art. 16, § 15; *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977) (the character of property "is fixed by the Texas Constitution, and not by what is 'just and right' "); *Cameron v. Cameron,* 641 S.W.2d 210, 213 (Tex. 1982) (the distinction between separate and community property is constitutionally-mandated). The characterization of the property is based on the evidence introduced at trial. *Cockerham v. Cockerham,* 527 S.W.2d 162, 173 (Tex.1975) (trial court may not ignore the jury's decision on the status of property); *In re Marriage of Moore,* 890 S.W.2d 821, 834 (Tex.App.—Amarillo 1994, no writ); *Hirsch v. Hirsch,* 770 S.W.2d 924, 928 (Tex.App.—El Paso 1989, no writ) (court may not ignore jury's characterization of property).

The decision on reimbursement is a legal issue. *See Heggen v. Pemelton,* 836 S.W.2d

---

1. Our opinion in *Magill v. Magill,* 816 S.W.2d 530 (Tex.App.—Houston [1st Dist.] 1991, writ denied), demonstrates the weakness in the *Finch* and *Wallace* holding. In *Magill,* we chastised the appellant for not having findings on value:

Without recorded property values and factual findings, we presume that the trial court property considered the entire circumstances of the parties and correctly exercised its discretion in dividing their property.

*Magill,* 816 S.W.2d at 534.

145, 148 (Tex.1992) (reimbursement is a "vested economic right").[2] The amount to be reimbursed is based on the evidence introduced at trial.

The decision on the value of the property is a factual issue based on the evidence received at trial. *Grossnickle v. Grossnickle*, 865 S.W.2d 211, 212 (Tex.App.—Texarkana 1993, no writ) (party has right to jury trial on value of property; court cannot ignore findings); *Archambault v. Archambault*, 763 S.W.2d 50, 51 (Tex.App.—Beaumont 1988, no writ) (court may not treat jury's valuation as advisory; *see Moore*, 890 S.W.2d at 838 (jury's decision on valuation is binding).

Thus, the trial court must begin with a decision that is constitutional (character of the property), then reaches a decision that is legal (reimbursement), then factual decisions about value, before it makes its final decision on the division itself, which is discretionary. The last decision, the only one that is discretionary, rests on layers of decisions that are constitutional and legal decisions which cannot be undone by the trial court based simply on its "discretion."

Under the majority's opinion, all levels of the trial court's decision all collapsed into one decision—whether the entire division is "just and right." Without information about the trial court's underlying assumptions about the character of the property, reimbursement to the community, and value of the property, we have no way to decide if the trial court's ultimate division is "just and right."[3]

Our opinions on this issue are in direct conflict with the opinion of our sister court, a court with which we share jurisdiction over 14 counties. In *Joseph v. Joseph*, 731 S.W.2d 597, 598 (Tex.App.—Houston [14th Dist.] 1987, no writ), the Fourteenth Court of Appeals reversed and remanded because the trial court refused to file findings and assign

values for three pieces of property whose value was disputed at trial.

In *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989), the Texas Supreme Court stated that the trial court's duty to file findings and conclusions is mandatory. The trial court's failure to respond when the requesting party has properly made all requests is presumed harmful unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. *Id.*

In *Sheldon Pollack Corp. v. Pioneer Concrete of Texas, Inc.*, 765 S.W.2d 843, 845 (Tex.App.—Dallas 1989, writ denied), the Dallas Court of Appeals stated that the test for determining whether a complaining party has suffered harm due to the court's failure to file findings is:

> Whether the circumstances of the particular case would require an appellant to have to guess the reason or reasons that the trial judge has ruled against it. In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant.

*Id.; see also Fraser v. Goldberg*, 552 S.W.2d 592, 594 (Tex.App.—Beaumont 1977, writ ref'd n.r.e.). On appeal, neither the appellant nor the appellate court should have to guess the trial court's reasons for its division of property. *Joseph*, 731 S.W.2d at 598; *Fraser*, 552 S.W.2d at 594.

Here, Kathleen's pleadings requested a disproportionate share of the community property based on a number of grounds, including fault, disparity of earning power, future employability, and claims for reimbursement based on Harold's dissipation of community funds. The trial court's findings completely ignored these grounds for recov-

**2.** I recognize that in an earlier opinion the Supreme Court called reimbursement an "equitable" remedy. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex.1988). Because our community property law did not develop from the common law, I believe *Heggen*'s characterization of reimbursement as a "vested right" is correct and *Penick* is wrong.

**3.** This holding, which was first stated in *Wallace* and repeated in *Finch*, was aptly criticized in a continuing legal education article by Wm. Dudley, "Preservation of Error and Appellate Practice," Advanced Family Law Course NN–25 (State Bar of Texas, 8–15–94). In that article, Mr. Dudley wrote: "It is difficult to see just how a court of appeals can determine the fairness of the division without a finding as to value."

ery. The trial court's two conclusions were bafflingly vague:

1. The equitable claims for reimbursement of both parties were taken into account and considered.

2. The property division was based on the evidence and such permissible factors as the evidence raised and is fair and equitable to both parties.

Essentially, the trial court's "conclusion" is that the division it made was "just and right." The majority assumes the trial court made a division that was "just and right" without examining any assignment of the value and characterization of the property.

The lack of findings force Kathleen and this Court to guess the reasons the trial court divided the property the way it did. Kathleen clearly suffered harm in the presentation of her case on appeal. *See Joseph,* 731 S.W.2d at 598 (appellant was harmed by failure of trial court to make findings that specified the appraisal method used to divide property).

The trial court has wide discretion to take the factors mentioned into account in dividing the property. However, the trial court's discretion is not limitless. Without meaningful findings or conclusions, it is impossible for us to determine that the trial court acted within that discretion.