Opinion issued August 26, 2004 










In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00846-CV




TIMOTHY M. HAILEY, Appellant

V.

CECELIA E. HAILEY, Appellee




On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2001-29969




O P I N I O N

          Husband, Timothy Hailey, appeals from a judgment awarding Wife, Cecelia
Hailey, the greater portion of their community estate in their divorce trial. In his first
three issues, Husband contends that the trial court abused its discretion by not
dividing the property in a just and right manner, by not manifesting a due regard for
Husband’s rights, and by not awarding Husband one-half of the community’s
economic contribution to Wife’s separate estate. In his fourth issue, Husband asserts
that the trial court’s conclusion of law concerning the community estate’s claims for
reimbursement against his separate estate is erroneous. Husband complains of
cumulative error in his fifth issue. We affirm.
Background
          Husband and Wife were married on March 14, 1998 and permanently separated
less than two and a half years later, in October 2000. Before their final separation,
the couple separated for six weeks during the summer of 1998. No children were
born of or supported by the marriage. 
          Husband and Wife were both in their thirties when they married. At that time,
Wife’s separate estate consisted primarily of the following: employee stock and an
employee profit-sharing plan worth approximately $224,000, equity of approximately
$38,000 in a house, and personal property. Husband owned a house with equity of
approximately $30,000 at the time of marriage, as well as personal property. They
chose to reside in Wife’s house and leased Husband’s house. 
          Both Husband and Wife worked during the marriage. But, although Husband
worked as an independent contractor in the air-conditioner repair business, he
reported a net income of only $700 during the first year of marriage, no income the
second year, and a net loss the third year. Wife earned an average salary of $84,000
annually as a comptroller for the company for which she had worked for over 18
years.
          Wife filed for divorce on June 13, 2001, and Husband countersued three
months later. Neither petition asserted fault. The trial court’s judgment separated the
community estate by ordering that (1) Wife and Husband each be separately
responsible for the attorney’s fees they incurred during the divorce proceedings, and
that (2) the remainder of the community property be divided as shown below.
Wife’s Award of Community Property
          Wife received a value of $112,541 in assets that had been part of the
community estate, as follows:



 
(1) Household Furnishings $ 3,975
          (2)     HISCO Employee Stock Ownership Plan [ESOP]   $69,546



          (3)     Klein Bank account                                                  $ 600
          (4)     HISCO Profit-Sharing Plan                                      $10,009
          (5)     2001 Navigator                                                         $ -542



          (6)     Community estate’s economic contribution claim   $28,953
                    against Wife’s separate estate (community funds 
                    used to enhance value of house that Wife owned
                    before marriage)

The community-estate debt that was assigned to Wife totaled $38,902 for the
following debts: Foley’s for $331, First USA Bank for $14,470, Bank Card Service
for $11,529, and Capital One for $12,572. After subtracting the community debt
assigned to Wife from the community assets awarded to Wife, Wife’s net award
totaled $73,639.
Husband’s Award of Community Property
          Husband received a value of $58,256 in assets that had been part of the
community estate, as follows: 
(1)Household furnishings$ 2,300
          (2)     State Farm life insurance policy                               $ 5,293
          (3)     Washington Mutual bank account                            $ 4,256
          (4)     Federal Credit Union bank account                          $ 108
          (5)     1999 Dodge Ram truck                                             $ 9,745



          (6)     Community estate reimbursement claims                 
                    against the separate estate of Husband                     $36,119
          (7)     State Farm Individual Retirement Account              $ 435

Only two debts that belonged to the community estate, First USA Visa for $6,905 and
Chase Platinum Visa for $3000, were awarded to Husband, for a total of $9,905.
Thus, the total net award for Husband was $48,351.
          The effect of the net distribution of the estate was approximately a 60/40
division of property in favor of Wife. In its conclusion of law number two, the trial
court stated that the “division of the property of [Wife] and [Husband] effected by the
final judgment is just and right, having due regard for the rights of each party
irrespective of the characterization of any item of property as either community or
separate.”Division of Community Property
          In his first issue, Husband contends that the trial court abused its discretion by
failing to divide the community estate in a just and right manner and by awarding an
approximate 60/40 division of the community estate to Wife after having previously
stated that it would divide the property “close to a 50/50 split.” In issue two,
Husband complains that the trial court awarded “essentially all” of the community
assets to Wife and abused its discretion by failing to manifest a due regard for his
rights. 
          In a decree of divorce, the court shall order a division of the community estate 
in a manner that the court deems just and right, having due regard for the rights of
each party. Tex. Fam. Code Ann. § 7.001 (Vernon 2004); Rafferty v. Finstad, 903
S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ denied). In effecting a
just and right division of the community estate, section 7.001 of the Family Code 
vests the trial court with broad discretion that will not be reversed on appeal unless
the complaining party shows that the trial court clearly abused its discretion. Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Rafferty, 903 S.W.2d at 377. The test of
whether the trial court abused its discretion is whether the court acted arbitrarily or
unreasonably, and without reference to any guiding principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Rafferty, 903
S.W.2d at 376. It is the duty of the appellate court to presume that the trial court
properly exercised its discretion in dividing the marital estate. Murff, 615 S.W.2d at
699. 
          A trial court may order an unequal division of the community property when
a reasonable basis exists for granting that relief. Robles v. Robles, 965 S.W.2d 605,
621 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The division of property
must not be so disproportionate as to be inequitable, and the circumstances must
justify awarding more than one-half to one party. Patt v. Patt, 689 S.W.2d 505, 507
(Tex. App.—Houston [1st Dist.] 1985, no writ). Relevant factors in the division of
the marital estate include (1) the education of the parties, (2) their relative earning
capacities, (3) the size of their separate estates, and (4) the nature of the community
property.


 Murff, 615 S.W.2d at 699; Alsenz v. Alsenz, 101 S.W.3d 648, 655 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied).
Education of the Parties
          Husband has more formal education than Wife. He received a degree in
agronomy (turf-grass science) from Texas A&M University in 1987 and education
in air-conditioning repair as a 1997 graduate from Houston Community College. 
Wife completed only one year of college following high school. Because Husband’s
formal education empowers him to obtain gainful employment at wages exceeding
Wife’s, this factor favors Wife’s receiving a greater share of the community property. 
Relative Earning Capacity
          Although Wife earned more income than Husband at an average wage of
$84,000 annually, the record suggests that Husband’s earnings could have exceeded
Wife’s. Husband could have earned much as $125,000 in the air-conditioning-repair
business alone, but Husband also had his own landscaping business and worked part-time in the car-wash business. Wife’s salary appears to have peaked, based on her
employment for the past 18 years for the same company after working her way up
from receptionist to comptroller. Moreover, Wife testified that she may need to seek
a lower position at the company and take a pay cut to reduce work-related stress. 
Because Husband has the earning capacity to exceed Wife’s wages, this factor favors
Wife’s receiving a greater share of the community estate. 
Size of Separate Estates
          Husband and Wife both owned houses prior to marriage, and Wife had slightly
more equity in her house when they married.


 Husband also had more credit-card
debt than wife, at $12,600. Because of Wife’s employee stock and profit-sharing
plan, however, her separate estate greatly outweighs Husband’s.


 Thus, although
Husband was capable of earning more money than Wife due to his formal education,
Wife had developed a considerably larger separate estate than Husband before
marriage. Because Wife’s separate estate is more valuable than Husband’s, this factor
favors Husband’s receiving a greater share of the community property. 
Nature of Community Property 
          As reflected in the trial court’s finding of fact number four, the community
estate consists primarily of the community interest in Wife’s employee stock-ownership plan, valued at $69,546, and the profit-sharing plan valued at $10,009, for
a total of $79,555. In addition, the community estate had a total value of $65,072 for
the community estate’s $28,953 claim for economic contribution for community
funds spent to enhance the value of Wife’s house, and the community estate’s claim
for reimbursement for $36,119 from the separate estate of Husband. The remaining
community assets included the 1999 Dodge Ram truck, with an equity valued at
$6,745; the State Farm Life Insurance Policy, valued at $5,293; and the Washington
Mutual Bank account, valued at $4,256. 
          Wife contends that she is entitled to a greater share of the community estate
because she earned the vast majority of the income brought into the community
estate. Husband contends that Wife interfered with his ability to work by imposing
a curfew on him that required him to be home by 6:00 p.m. on weekdays and 2:00
p.m. on weekends. Husband also contends that, although his tax records show net
losses, he routinely deposited money into the community estate and gave the
community estate the benefit of depreciation for some of his property in joint tax
returns. Wife denied placing a curfew on Husband and claimed that he was
voluntarily underemployed. We conclude that the trial court did not abuse its
discretion by impliedly finding that this factor favors Wife’s receiving a greater share
of the community property. 
Conclusion
           Application of the Murff factors supports the trial court’s having properly
exercised its discretion to award Wife a greater share of the community estate in
dividing the property in a “just and right” manner. See Murff, 615 S.W.2d at 699. 
The record shows that Husband and Wife are in their thirties, that they are physically
and mentally able, and that each is capable of earning over $80,000 annually. 
Although highly educated and capable of earning over $100,000 annually, Husband
reported less than $700 in income during the marriage. The couple lived in Wife’s
house and were supported by Wife’s income. Wife’s income paid for the benefits to
Wife’s and Husband’s separate estates. Under the circumstances, the division of
property was not so disproportionate as to be inequitable, and the circumstances
justify awarding more than half of the community estate to Wife. See Patt, 689
S.W.2d at 507. 
          In conducting a bench trial of a divorce case, the trial court has the opportunity
to observe the parties, determine their credibility, and evaluate their needs and
potential, both social and economic. Murff, 615 S.W.2d at 700. Similarly, as the trier
of fact, the trial court is empowered to apply its understanding and experience;
mathematical precision in dividing property in a divorce is usually not possible. Id. 
Given the wide latitude and discretion vested in the trial court, which we may disturb
only in a case of clear abuse, id., we cannot conclude, under the circumstances
presented here, that the trial court abused its discretion by awarding Wife a greater
share of the community estate. 
“Close to a 50/50 Split” 
          In support of his first issue, Husband further contends that, because the trial
court stated in its closing remarks that, “it works out that it is close to a 50/50 split
and I’m going to leave the parties as they sit today,” the trial court erred by instead
dividing the property closer to a 60/40 division. The trial court’s remarks, however,
are not reflected in its findings of fact, conclusions of law, or judgment. Accordingly,
they are not dispositive. See In re W.E.R., 669 S.W.2d 716, 716 (Tex. 1984). Rather,
the trial court’s conclusions of law and judgment properly refer only to the just and
right division of the property mandated by section 7.001 of the Family Code. See
Tex. Fam. Code Ann. § 7.001; Rafferty, 903 S.W.2d at 376. Accordingly,
Husband’s contention does not conflict with our conclusion that the trial court did not
abuse its discretion by awarding Wife a greater share of the community estate in
effecting its just and right distribution of the community estate. 
          We overrule Husband’s issue one.


 
“Essentially All” Community Assets to Wife
          In his second issue, Husband complains that Wife was awarded “essentially all”
of the community assets. Husband ignores that the community estate’s considerable
debt was also assigned to Wife. Although she received most of the community assets,
Wife also received most of the community debt. Accordingly, we reject Husband’s
contention that Wife received “essentially all” of the community assets and affirm our
conclusion that the trial court did not abuse its discretion in its just and right
distribution of the community estate. 
           We overrule Husband’s issue two.
Reimbursement Award Against Husband’s Estate
          The reimbursement award stems from a claim by the community estate for
compensation for community funds spent during the marriage on the house that
Husband owned before the marriage. In conclusions of law number four and five, the
trial court assessed a value of $36,119 for the reimbursement claim made by the
community estate. The community estate’s entire reimbursement award, valued at
$36,119, was awarded to Husband as his sole property. 
          Husband challenges the assessed value of $36,119 for the reimbursement claim
in issue four. Specifically, Husband claims that the record does not support the trial
court’s conclusions of law regarding the community estate’s claims for
reimbursement against his separate estate, and contends that the reimbursement award
should be set aside. 
          The trial court entered findings of fact and conclusions of law in response to
Husband’s request. Husband did not offer proposed findings, and did not propose
additional or amended findings after the trial court adopted the findings proposed by
Wife. See Tex. R. Civ. P. 298, 299. In an appeal from a bench trial, we review a trial
court’s conclusions of law as legal questions, de novo, and will uphold them on
appeal if the judgment can be sustained on any legal theory supported by the
evidence. BMC Software Belgium v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In
re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). An
appellant may not challenge a trial court’s conclusions of law for factual sufficiency,
but we may review the legal conclusions drawn from the facts to determine their
correctness. BMC Software Belgium, 83 S.W.3d at 794. If we determine that a
conclusion of law is erroneous, but that the trial court nevertheless rendered the
proper judgment, the error does not require reversal. Id. 
          When, as here, the appellate record contains a complete reporter’s record, we
review the trial court’s findings of fact under the same standards for legal and factual
sufficiency that govern review of jury findings. See Min v. Avila, 991 S.W.2d 495,
500 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The trial court acts as factfinder
and is the sole judge of the credibility of witnesses in a bench trial. See Murff, 615
S.W.2d at 700; Southwestern Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex.
App.–Houston [1st Dist.] 1992, writ denied). Accordingly, the trial court may
consider all the facts and circumstances in connection with the testimony of each
witness and accept or reject all or part of that testimony. . An appellate court may
not substitute its judgment for the trial court’s assessment of witnesses’ testimony in
a bench trial. See In re W.E.R., 669 S.W.2d at 717. 
          When the trial court’s findings of fact address a ground of recovery or defense,
but inadvertently omit an essential element, we may infer the omitted element,
pursuant to rule 299 of the Rules of Civil Procedure, because the judgment is
presumed valid. See Tex. R. Civ. P. 299; Vickery v. Comm’n for Lawyer Discipline,
5 S.W.3d 241, 251-53 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); see also
Vickery, 5 S.W.3d at 252 (noting that presumptive validity of judgment may apply
even more strongly in bench trial). We emphasize, moreover, that the value of
specific items of property is not an ultimate issue in the trial court’s property division
and does not require specific fact findings by the trial court. Rafferty, 903 S.W.2d at
376. 
          Husband challenges the following two conclusions of law:
4. The community estate has claims for reimbursement
against the separate estate of [Husband] in the amount of
$36,119.
 
5. As part of a just and right division of the assets and
liabilities of the marriage, [Husband] is awarded the
community property claim against his separate property of 
$36,119.

          Husband challenges the conclusions of law concerning the reimbursement
claim on the following grounds: (1) Wife offered no evidence to support her claim
for $1,500 in improvements to his house; (2) the total paid by the community towards
his house was $20,423, rather than $24,119; (3) the trial court did not offset $26,000
in benefits to the community estate from rent of Husband’s house, and (4) the trial
court did not offset benefits valued at $868 for depreciation of his house that was
taken on the couple’s 1999 joint tax return. The trial court entered findings of fact
and conclusions of law, but addressed these issues solely in its conclusions of law
without entering separate findings. 
          In a decree of divorce, the court shall determine the rights of both spouses in
a claim for reimbursement and shall apply equitable principles to (1) determine
whether to recognize the claim after taking into account all the relative circumstances
of the spouses; and (2) order a division of the claim for reimbursement, if appropriate,
in a manner that the court considers just and right, having due regard for the rights of
each party. Tex. Fam. Code Ann. § 7.007(b)(1), (2) (Vernon 2004). The trial court’s
discretion in evaluating a claim for reimbursement is as broad as its discretion to
effect a just and proper division of the community estate. Penick v. Penick, 783
S.W.2d 194, 198 (Tex. 1988); Alsenz, 101 S.W.3d at 655. 
          A party claiming the right of reimbursement must plead and prove that the
expenditures and improvements were made and that they are reimbursable. Vallone
v. Vallone, 644 S.W.2d 455, 459 9Tex. 1982). The trial court must consider the facts
and circumstances, and determine what is just, fair, and equitable. Penick, 783
S.W.2d at 197. The trial court is accorded great latitude in applying equitable
principles to value a claim for reimbursement. Id. at 198.
          Claims for reimbursement may be offset against each other if the court
determines that this is appropriate. Tex. Fam. Code Ann. § 3.408(c) (Vernon 2004). 
A trial court is required to consider offsetting benefits when a litigant requests that
relief. Gutierrez v. Gutierrez, 791 S.W.2d 659, 663 (Tex. App.—San Antonio 1990,
no writ). 
Fact Findings Support a Reimbursement Claim for an Additional $3,480
          On reviewing the record, we discern that finding of fact number nine supports
a reimbursement claim to the community estate valued at $39,599, rather than the
$36,119 that was awarded in conclusions of law numbers four and five. According
to finding of fact number nine, the community disbursed $39,599 in community funds
for Husband’s separate property, as follows: $19,248 for insurance, taxes and
mortgage payments on Husband’s house, $1,500 for improvements to Husband’s
house, $218 for supplies for Husband’s house, $1,028 for utilities for Husband’s
house, $2,125 for repairs to Husband’s house, $12,600 for the separate, credit-card
debt that Husband incurred before the marriage, and $2,880 for payments made on
the State Farm life insurance policy that Husband owned before the marriage. These
findings thus show that Husband owed the community estate $3,480 more than he
was ordered to pay as reimbursement to the community estate. 
Sufficiency Challenges to Findings of Fact
          Husband contends that Wife offered no evidence to support her claim for
$1,500 for improvements to his house, as shown in finding of fact number nine. The
record reflects, however, that Wife’s “trial inventory and appraisement” was admitted
into evidence and established that the community estate spent $1500 on
improvements to Husband’s house. As well, Wife’s testimony referred to a new roof,
paint and new flooring as improvements made to Husband’s house. Husband has not
demonstrated on appeal why this evidence is insufficient to establish that $1,500 was
spent on improvements to his house. We overrule Husband’s challenges to the
sufficiency of the evidence concerning the $1,500 in expenditures for improvements
to his house.
          Husband further asserts that the total paid by the community estate towards his
house was $20,423, rather than the $24,119 shown in the trial court’s finding of fact
number nine. Husband suggests that the community estate is entitled to only $20,423
for the mortgage payments made on his house. Wife’s “trial inventory and
appraisement,” however, corresponds to the trial court’s finding of fact number nine
and thus supports that the community estate spent a total of $24,119 for Husband’s
house for the following: $19,248 for insurance, taxes and mortgage payments;
$1,500 for improvements; $218 for supplies; $1,028 for utilities, and $2,125 for
repairs. We overrule Husband’s challenges to the sufficiency of the evidence
concerning the $24,119 in expenditures by the community estate on his house. 
Offset for Deduction on Tax Return 
          Husband complains that he did not receive the offsets to which he was entitled
because the trial court did not allow him credit for $26,000 for the rental income that
the community received from his house and credit for the $868 deduction for the
depreciation of his house taken by the community on its 1999 joint tax return. The
trial court’s findings of fact and conclusions of law do not specifically mention
offsets, but do address reimbursements to the separate estates. Accordingly, we may
infer omitted findings in support of the trial court’s judgment. See Tex. R. Civ. P.
299; Vickery, 5 S.W.3d at 251-53.
          Husband claims that he was entitled to an offset for the $868 deduction for the
depreciation to his house taken on the community’s 1999 joint tax return. The record
shows that Husband admitted that he owed the Internal Revenue Service $1339 in
taxes from his 1997 tax return, which resulted in a deduction in that amount from his
1998 tax return filed jointly with Wife. But even if Husband were entitled to an offset
for the $868 deduction for the depreciation to his house on the 1999 joint tax return,
it appears from the record that he received a benefit from the community estate for his
1997 tax return pertaining to his separate estate. The record thus supports the trial
court’s failure to award Husband an offset for the depreciation of his house on the
1999 joint tax return. 
Offset for Rents Received from Lease of Husband’s House
          The record reflects that Husband and Wife agreed that the total amount the
community received in rent from the lease of Husband’s house was $26,000. Wife
contends that the trial court disallowed the offset for the rental receipts from
Husband’s house for two reasons. Wife first contends that, because the community
estate received no rental payments from the lease of Husband’s house after October
2000, when the couple separated, the community estate never benefitted from the
separate property after that date. Wife also contends that Husband was not entitled
to an offset for rental payments received before their final separation because
Husband used the rental receipts of $855 a month to pay $699 a month for his truck
note.



          The record shows that Husband and Wife married on March 14, 1998,
separated for six weeks during the summer of 1998, and finally separated in October
2000. When Husband and Wife married, Husband’s house was empty until it was
repaired and was rented to a tenant in October 1999. Wife testified that she did not
see any rental receipts after the couple separated in October 2000. Thus, according
to Wife, only one year’s worth of rental receipts, valued at $855 a month for a total
of $10,260, was actually placed into the community estate. Although Husband
contended that he continued to make deposits into the community estate following the
couple’s separation, the trial court, as factfinder and judge of the credibility of
witnesses, could have determined that Wife was more credible than Husband. Based
on the evidence, the trial court, as the factfinder, could reasonably have determined
that Husband was entitled to receive only an offset of $10,260 for the rental income
used to benefit the community estate. 
          Although Husband was entitled to an offset of $10,260, the trial court was
within its discretion in failing to allow Husband a credit in this amount because
Husband received the benefit of the increased value to his home in an equal or greater
value to the offset to which he was entitled. During the time of marriage, Husband’s
house increased in value between $10,000 and $20,000.


 The increased value to
Husband’s house during the marriage was an asset that could have been included in
the community assets subject to division by the trial court, but was not. See, e.g.,
Murff, 615 S.W.2d at 699 (stating that trial court may consider many factors in
deciding the estates of the parties, including the size of their separate estates); Padon
v. Padon, 670 S.W.2d 354, 359 (Tex. App.—San Antonio 1984, no writ) (holding that
trial court may consider a spouse’s separate property when dividing the spouses’
estates); Wilkinson v. Wilkinson, No. 03-97-00611-CV, 1999 WL 314783 at *2 (Tex.
App.—Austin May 20, 1999, no pet.) (not designated for publication) (stating that trial
court may consider enhancement in value of a spouse’s separate real property when
determining reimbursements). Because Husband’s house received an increased value
in an equal or greater amount than $10,260 during the marriage, the trial court acted
within its discretion by declining to offset the reimbursement claim of $10,260.
          After considering all the facts and circumstances, the trial court could have
determined that it was fair, just, and equitable to limit Husband’s offset to $10,260
from the rental income. The trial court could have further determined that, because
Husband’s house increased in value between $10,000 and $20,000, the rental income
received from the lease of the house approximately equaled the increase in value to the
house, and, thus, Husband was not entitled to any offset from the reimbursement
claim. See Penick, 783 S.W.2d at 197 (holding that trial court should consider facts
and circumstances and determine what is just, fair, and equitable). 
          We overrule Husband’s fourth point of error.
Economic Contribution
          The economic contribution award stems from a claim by the community estate
to compensate it for the enhancement in value, derived from community funds, to the
house that Wife owned before the marriage. In conclusion of law number three, the
trial court assessed a value of $28,953 for the economic contribution to Wife’s house
made by the community estate. The community estate’s entire economic contribution
award, valued at $28,953, was awarded to Wife as her sole property.
          In issue three, Husband makes two challenges to the economic contribution
award. First, Husband asserts that the trial court abused its discretion by “failing to
award [Husband] one-half of the community’s equitable contribution to [Wife’s] 
separate estate while taking that award into consideration in the calculation of the net
award to each party and by intending an award close to 50/50 and favoring [Husband]
and effecting a 60/40 award favoring [Wife].” Second, Husband contends that the trial
court undervalued the economic contribution award. 
Division of Economic Contribution Award in Divorce Decree 
          A marital estate that makes an economic contribution to property owned by
another marital estate has a claim for economic contribution against the benefitted
estate. Tex. Fam. Code Ann. § 3.403(a) (Vernon Supp. 2004). In a decree of
divorce, the court shall determine the rights of both spouses in a claim for economic
contribution as provided by Family Code Chapter 3, Sub-chapter E, in a manner that
the court considers just and right, having due regard for the rights of each party. Tex.
Fam. Code Ann. § 7.007(a) (Vernon Supp. 2004). The court shall further order a
division of a claim for economic contribution of the community marital estate to the
separate marital estate of one of the spouses. Tex. Fam. Code Ann. § 7.007(a) (1). 
A spouse seeking economic contribution must bring forth sufficient evidence for the
factfinder to determine the enhancement value to the benefitted estate. Boyd v. Boyd,
131 S.W.3d 605, 613 (Tex. App.—Fort Worth 2004, no pet.).
           Husband’s contention that he was due one-half of the economic contribution 
award ignores the statutory requirement that the award must be divided in a “just and
right” distribution. Tex. Fam. Code Ann. § 7.007(a). Although Husband is correct
in stating that Wife was awarded all of the economic contribution value from her
separate estate, we nonetheless conclude, for two reasons, that a just and right
distribution of the assets occurred under the circumstances here. First, as addressed
above, Husband was awarded all of the community-estate reimbursement claims
against his separate estate, for a total of $36,119, an amount greater than the $28,953
granted to Wife for the economic contribution award. The record suggests that, rather
than dividing the reimbursement claim and the economic contribution award between
Husband and Wife, the trial court assigned the respective awards, which were similar
in value, to Husband and Wife, respectively. Second, Husband received a just and
right division of the marital estate, as discussed in issues one and two above. 
          We conclude that the trial court did not abuse its discretion under the
circumstances here, which include the award of (1) all the economic contribution
claim to Wife, (2) all the reimbursement claim to Husband, and (3) the division of the
entire community estate in a just and right manner. 
 

Amount of Economic Contribution Award
          Husband also contends that the trial court abused its discretion by incorrectly
assessing a value of $28,953, rather than $55,438, for the economic contribution
claim. According to Family Code Chapter 3, Sub-chapter E, the amount of the claim
based on economic contribution is equal to the product of (1) the equity in the
benefitted property on the date of divorce; multiplied by (2) a fraction in which: (A)
the numerator is the economic contribution to the property owned by the benefitted
marital estate by the contributing marital estate; and (B) the denominator is an amount
equal to the sum of (I) the economic contribution to the property owned by the
benefitted marital estate by the contributing marital estate; and (ii) the contribution by
the benefitted estate to the equity in the property owned by the benefitted estate. Tex.
Fam. Code Ann. § 3.403(b) (Vernon 2004). 
          Husband and Wife recognize that the formula described in Section 3.403(b) of
the Family Code is [Ax(B+C+D)/B+C+D+E+F)]. See id. They likewise agree to all
of the values in the formula, with the exception of (1) the fair market value of Wife’s
house on date of marriage and divorce and (2) the economic contribution in the form
of improvements to Wife’s house. These disagreements result in the discrepancy
between the assessed value of the economic contribution claim by Husband and Wife.
Husband asserts that the economic contribution claim should be $55,438,


 as
compared to the trial court’s award of $28,954 based on Wife’s figures, which the trial
court adopted.


 
          1. Fair Market Value of Wife’s House
          It is undisputed that Wife purchased her house in 1996, and thus before the
marriage, for $160,097. The parties’ disagreement concerning the fair market value
of Wife’s house at the time of marriage pertains to Wife’s contention that she made
$15,000 in improvements to the house prior to marriage, elevating its value to
$175,076. Wife testified that she spent $15,000 for the installation of marble tile and
formal drapes in her house prior to marriage, thereby enhancing the value of the house
by $15,000. 
          Similarly, Husband and Wife also disagree about the fair market value of Wife’s
house at the time of divorce. Husband contends the house’s value at that time was
$205,000, but Wife asserts that the value was $177,812. Husband’s asserted value
comes from the assessed value of the house at $205,000 for taxation purposes by the
Harris County Appraisal District (HCAD). Husband acknowledged, however, that in
his sworn inventory he claimed that the house was worth only $193,600, that he only
had a “rough idea” of the fair market value of the house, and that he did not know the
fair market value of the house at the time of divorce. Wife testified that she researched
her neighborhood to determine the selling price of comparable homes and believed
that her home only had a fair market value of about $178,000. She further stated that
she was challenging HCAD’s assessed value. 
          Based on the record before us, we cannot conclude that the trial court abused
its discretion by determining that the fair market value of Wife’s house at the time of
marriage was $175,076, and that its fair market value at the time of divorce was
$177,812, as Wife contended.
          2. Improvements to Wife’s House
          Husband contends that $3,450 of community funds were spent on improvements
that enhanced Wife’s house pursuant to the “(C)” portion of the Family Code formula,
but Wife asserts that no community funds were spent during the marriage for 
improvements to her house. According to Husband, improvements to Wife’s house
during the marriage consisted of door refinishing, installing solar screens on windows,
and installing a lawn sprinkler system. Although Husband testified that $3,450 in
community funds were spent on improvements to Wife’s house, he also acknowledged
that he did not know whether those funds were actually spent for improvements to
Wife’s house. Moreover, Husband acknowledged that he did not know which repairs
constituted improvements for purposes of his claim for economic contribution. These
circumstances warranted the trial court’s impliedly determining that Husband did not
bring forth sufficient evidence from which the trial court, as factfinder, could
determine the enhancement value to Wife’s benefitted estate allegedly derived from
community funds. See Boyd, 131 S.W.3d at 613. This determination, in turn, further
warranted the trial court’s determining that no community funds were spent on
improvements to Wife’s house. We thus conclude that the trial court did not err by
entering its conclusion of law number three by assessing a value of $28,953,


 as
proposed by Wife, for the economic contribution made by the community estate on
Wife’s house. 
          We overrule Husband’s issue three.
Cumulative Error
          In his fifth point of error, Husband complains that the trial court committed
cumulative error, requiring remand for new trial on the property division. Having
found no error in Husband’s issues one through four, we conclude no cumulative
error occurred.
          We overrule Husband’s fifth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.