NO. 07-06-0080-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D 



MAY 21, 2007



______________________________




DAVID TEICHMANN, D/B/A DAVID'S GOLF SHOP, ET AL.
, APPELLANTS



V.



ROYAL LINKS, INC., LANDMARK FINANCIAL CORPORATION, D/B/A LFC, INC.,


MIKE HORTON, C AND J LEASING CORP., AND


THE ESTATE OF KIM J. BROWN, DECEASED, APPELLEES




_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 33,715; HONORABLE LEE WATERS, JUDGE



_______________________________



Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION


 Pending before this Court is the parties' Joint Motion to Dismiss Pursuant to
Settlement. By letter dated May 3, 2007, this Court notified counsel that a review of the
clerk's record indicated that the order appealed from was interlocutory as it did not dispose
of all parties and claims. The Court also requested that counsel show cause why this Court
has jurisdiction, noting that failure to do so would result in dismissal for want of jurisdiction. 
See Tex. R. App. 42.3(a). No response was filed. 

 This Court is obligated to determine, sua sponte, its jurisdiction to hear an appeal. 
Welch v. McDougal, 876 S.W.2d 218, 220 (Tex.App.-Amarillo 1994, writ denied), citing New
York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 678 (Tex. 1990). Our jurisdiction
is established by various constitutional and statutory provisions. See, e.g., Tex. Const. art.
5, § 6; Tex. Gov't Code Ann. § 22.220 (Vernon 2004). Further, this Court has no jurisdiction
to review an interlocutory order presented to us by the appeal process prior to entry of a final
judgment. Warford v. Childers, 642 S.W.2d 63, 65 (Tex.App.--Amarillo 1982, no writ); cf.
Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2006) (authorizing review of
certain interlocutory orders). A judgment is final for purposes of appeal if it disposes of all
pending parties and claims in the record. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). 

 The Order Granting Defendant Landmark Financial Corporation, d/b/a LFC, Inc.'s
Motion to Dismiss and Dismissing Defendant Landmark Without Prejudice is interlocutory
and thus, not appealable. We have no jurisdiction to consider the Joint Motion to Dismiss
Appeal Pursuant to Settlement.

 Consequently, this purported appeal is dismissed for want of jurisdiction. 


 Patrick A. Pirtle

 Justice



 improvement" language. 
Id. We are to presume that an amended statute is prospective in its operation, and will be
controlling in cases filed after the effective date. Tex. Gov't Code Ann. § 311.022 (Vernon
2005); Bates v. Tesar, 81 S.W.3d 411, 427 (Tex.App.-El Paso 2002, no pet.). At the time
of the hearing, the applicable statute allowed a trial court to modify an order of
conservatorship if the modification would be in the best interest of the child and the
circumstances of the child, a conservator, or other party affected by the order have
materially and substantially changed since the date of the rendition of the order. (1) Act of
June 16, 2001, 77th Leg., R.S., ch. 1289, § 5, 2001 Tex. Gen. Laws 3108, 3108-09
(amended 2003) (current version at Tex. Fam. Code. Ann. § 156.101 (Vernon 2005)). 

 In determining the best interest of the child, a trial court can consider factors such
as the (a) desires of the child; (b) emotional and physical needs of the child now and in the
future; (c) emotional and physical danger to the child now and in the future; (d) parental
abilities of the individuals seeking custody; (e) plans for the child by these individuals; (f)
stability of the home or proposed placement; and (g) acts or omissions of the parent which
may indicate that the existing parent-child relationship is not a proper one. See Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).

 As evidence of the dangers to the child, Lowder contends that the child's cousins
have been abused, that Hanifin's sibling is in prison, and that one of Hanifin's boyfriends
has abused M.W.S.H. Lowder also contends that the environment is dangerous since
M.W.S.H. required several visits to the emergency room. (2) However, there is no evidence
that the primary care givers (Hanifin and her parents) were in any way abusive of M.W.S.H.
or tolerated others abusing any child in their presence. In fact, the record shows that when
Hanifin was informed of the boyfriend's alleged abuse of M.W.S.H., Hanifin stopped
associating with the boyfriend. Though the visits to the emergency room are relevant to
show Hanifin's care of the child and the safety of the environment, see Holley, 544 S.W.2d
at 371-72, it does not show abusive behavior. Overall, there was conflicting evidence on
whether the conditions in Hanifin's residence were detrimental to the child.

 Next, Lowder points to Hanifin's sporadic employment record as a sign of instability;
however, Hanifin explained the changes of employment as her attempts to spend time with
M.W.S.H. as well as his two half-brothers and that she was currently working part time on
the weekends in order to be able to spend time with the children. Lowder further contends
that five residential moves and Hanifin's four relationships with men since the original order
are indicative of the instability in the child's present living conditions. However, Lowder's
testimony reveals that in the same time period, Lowder has had three different employers,
two relationships with females other than Hanifin, and has moved twice with a third move
planned for the month after the trial court hearing. Finally, the trial court heard testimony
that Lowder and the child's stepmother would both work and that, if Lowder were awarded
custody, would place the child in an after school program rather than being available to be
with M.W.S.H. immediately after school. Although Lowder portrays Hanifin's life as
unstable, there are several indicators that Hanifin is succeeding in raising M.W.S.H. 
Hanifin's neighbors testified that the child is well-mannered, clean, and helpful. Some of
the child's teachers testified that the child is doing well in school, is a pleasant child, and
that Hanifin is active in the child's school and exhibits appropriate parental behavior.

 Finally, the trial court received expert testimony. The report of the investigator who
conducted the court-ordered social study revealed that Lowder would provide a suitable
home, and that he would financially be able to provide for the child. Further, the
investigator concluded that it was in the best interest of the child to relocate him to North
Carolina. However, M.W.S.H.'s counselor who had visited with the child on a professional
level testified to the contrary. The licensed professional counselor testified that his
relationship with the child began because of anxiety experienced by the child arising from
Lowder's petition for modification and the uncertainty of the pending hearing. The
counselor concluded that it would be very detrimental to relocate the child to North
Carolina. 

 From the record, it is clear that the lifestyles of Lowder and Hanifin differ greatly, and
that each has a different approach to raising children. The record supports Lowder's
contentions that Hanifin is very dependent on others financially, and many times
emotionally. However, the record also shows that the child appears well adjusted socially
and academically, and that Hanifin actively participates in M.W.S.H.'s life. It is further
evident from the record that the trial court was attentive and interjected its own questions
to witnesses to elicit further information necessary to determine the best interest of the
child. The trial court is given wide latitude in determining the best interests of a minor
child. Gillespie, 644 S.W.2d at 451. Further, the trial court is in the best position to
observe the demeanor and personalities of the witnesses and can "feel" the forces, powers,
and influences that cannot be discerned by merely reading the record. Bates, 81 S.W.3d
at 424. The modification statute's requirement of a material and substantial change of
circumstances is predicated upon the doctrine of res judicata as to the best interest of the
child at the time of the original decree awarding conservatorship and consistent with a
policy to prevent constant relitigation with respect to children. See Watts v. Watts, 563
S.W.2d 314, 316 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.), rev'd on other grounds,
Jones v. Cable, 626 S.W.2d 734 (Tex. 1981). Thus, we will not find an abuse of discretion
as long as some evidence of a substantive and probative character exists to support the
trial court's decision. See Bates, 81 S.W.3d at 425. It is undisputed that Lowder would be
able to provide a suitable home for the child. Further, with the exception of some problems
during the pendency of the petition for modification, the parties have abided by the original
order by honoring exchanges of the child for visitation purposes with minimal disruptive
behavior. Therefore, we conclude that the trial court did not abuse its discretion in denying
Lowder's petition to modify conservatorship. We overrule Lowder's first two issues.

Issue Three: Failure to make Additional Findings of Fact and Conclusions of Law

 Next, Lowder contends that the trial court erred as a matter of law in failing to make
additional Findings of Fact and Conclusions of Law. The record shows that after the
original Findings of Fact and Conclusions of Law were filed, Lowder filed a request for
Additional Findings of Fact and Conclusions of Law within the proscribed period. See Tex.
R. Civ. P. 298.

 If findings of fact and conclusions of law are properly requested, the trial court must
prepare them. See Tex. R. Civ. P. 296; Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex.1996). 
If a party makes request for additional findings and conclusions and the court fails to make
such findings, its failure is tantamount to refusal. Rafferty v. Finstad, 903 S.W.2d 374
(Tex.App.-Houston [1st Dist.] 1995, writ denied). However, if the record shows that the
complaining party did not suffer injury, the failure to make such additional findings does not
require reversal. Tamez v. Tamez, 822 S.W.2d 688, 692 (Tex.App.-Corpus Christi 1991,
writ denied); see also Huber v. Buder, 434 S.W.2d 177, 181 (Tex.Civ.App.-Fort Worth
1968, writ ref'd n.r.e.). 

 A review of Lowder's Request for Additional Findings of Fact and Conclusions of
Law reveals that the additional requested findings were either requests to acknowledge
undisputed facts (3) or were requests for the court to adopt Lowder's position or view as to
certain facts. (4) The court does not commit error in refusing to make additional findings if
the facts are undisputed. Rathmell v. Morrison, 732 S.W.2d 6, 19 (Tex.App.-Houston [14th
Dist.] 1987, no writ). Further, the court is not required to make findings contrary to, or
inconsistent with, the original findings. Tamez, 822 S.W.2d at 693. The refusal of the trial
court to make additional findings of fact and conclusions of law has not prevented Lowder
from adequately presenting his issues on appeal. Therefore, we conclude that the trial
court did not err in failing to file additional findings of fact or conclusions of law. We
overrule Lowder's third issue.

Issue Four: Trial Court's Conclusion of Law

 Lowder's final issue is that "the Trial Court erred as a matter of law in its Conclusions
of Law in finding that the Petition to Modify Conservatorship should be denied because as
a matter of law Hanifin's circumstances have significantly deteriorated since the entry of
the prior decree." (Emphasis added). We will construe Lowder's issue as challenging legal
sufficiency of the evidence supporting the trial court's decision denying his request for
modification. Wood v. O'Donnell, 894 S.W.2d 555, 557 n.1 (Tex.App.-Fort Worth 1995,
no writ) (We can construe issues broadly and liberally in the interest of justice). In other
words, Lowder challenges the trial court's finding of no material and substantial change by
claiming that there is "no evidence" that Hanifin's circumstances have NOT significantly
deteriorated. 

 In determining a "no-evidence" issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and inferences to the
contrary. In re T.D.C., 91 S.W.3d 865, 872 (Tex.App.-Fort Worth 2002, pet. denied). 
Anything more than a scintilla of evidence is legally sufficient to support the trial court's
conclusion. Id. In a conservatorship modification action, a "threshold inquiry" of the trial
court is whether the moving party has met the burden imposed upon him by the statute of
showing a material and substantial change, otherwise the trial court must deny the motion
to change the custody. Armstrong v. Armstrong, 601 S.W.2d 724, 725-26
(Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.); see also Bates, 81 S.W.3d at 421. To
show such a change, evidence must be tendered showing the circumstances at the time
of the prior order as compared to the circumstances existing at the time of the hearing on
the motion to modify. Watts, 563 S.W.2d at 315. Absent evidence of a material and
substantial change of circumstances, the court does not reach the question of what is in
the best interest of the child. Id.

 In this final issue, as presented, Lowder had the burden to show a material and
substantial change in Hanifin's circumstances. Though Lowder produced evidence of
Hanifin's circumstances at the time of the modification hearing, Lowder did not present
evidence of Hanifin's circumstances existing at the time of the initial order. Therefore,
Lowder has failed to meet the trial court's "threshold inquiry." (5) Hence, under this last
issue, the trial court does not reach the second prong under section 156.101 of the Texas
Family Code, and thus did not err in denying Lowder's petition for modification. Id. We
overrule Lowder's fourth issue.

Conclusion

 For the foregoing reasons, we affirm. 

 

 Mackey K. Hancock

 Justice








 



1. The statute also allows modification if the child is at least 12 years of age and has
filed with the court, in writing, the name of the conservator who is the child's preference to
have the exclusive right to determine the primary residence of the child; or if the
conservator who has the exclusive right to establish the primary residence of the child has
voluntarily relinquished the primary care and possession of the child to another person for
at least six months. See Tex. Fam. Code. Ann. § 156.101. However, Lowder does not
contend that these circumstances existed.
2. A review of the records show childhood illnesses or injuries caused by "a lack of
supervision."
3. For example, Lowder requested that the court acknowledge the undisputed fact
that Lowder would provide the child with a stable home, and that Hanifin had changed
addresses multiple times.
4. For example, Lowder requested that the court find that Lowder would provide an
intellectually stimulating environment for the child, and that Hanifin had placed too much
pressure on the child causing him to shut down emotionally.
5. Contrary to Lowder's contention of deteriorating circumstances, Hanifin's
circumstances, at minimum, appeared to have improved from the time of the filing of the
petition to modify until the time of the hearing on the motion. At the time of the hearing,
Hanifin was no longer unemployed and had moved into her own residence instead of living
with her parents.