Opinion issued October 5, 2006












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00941-CV




REGINALD EDMUND McKAMIE SR., Appellant

V.

GENEVA WINFIELD McKAMIE, Appellee




On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2004-18874




MEMORANDUM OPINION
          Appellant, Reginald Edmund McKamie Sr., appeals from the trial court’s final
divorce decree, complaining that the trial court did not make a “just and right”
division of the community assets and liabilities. In five issues, appellant challenges
the legal and factual sufficiency of the evidence supporting the trial court’s findings
of fact and conclusions of law,


 division of the community assets and liabilities,
valuation of the marital residence, valuation of other assets and liabilities, and
exclusion of appellant’s expert testimony regarding the fair market value of the
marital residence. We affirm.
BACKGROUND
          Appellant and appellee were married on August 23, 1975. They have two
children, who were 18 and 25 at the time of the divorce. Appellant is a lawyer and
maintains a solo plaintiff’s personal injury law practice, has a masters degree in
business administration, and is a certified public accountant. As a trial attorney, his
income varies from year to year. Appellant testified that, in 1999, he earned a $1.3
million fee from a single case, in addition to other fees during that year. He testified
that, in 2000, he made $377,000 from his law practice. Appellant produced income
tax documents showing that his income was $73,577 in 2002 and $111,546 in 2003. 
Appellee is a teacher in the Spring Branch Independent School District and holds a
master’s degree. She testified that her salary is $48,000 per year. 
          In 1999 and 2000, the McKamies did extensive remodeling of their residence. 
This remodeling was completed in early 2001. The trial court found, in finding of
fact C.5, that they spent approximately $335,000 on the remodeling. At trial, the
testimony of appellant’s expert regarding the fair market value of the residence was
excluded on the objection of appellee that appellant had not produced all the
documentation, as requested by appellee, that the expert relied on in preparing his
appraisal. Appellant testified that, in his opinion, the fair market value of the
residence was $720,000. Appellee’s trial inventory and appraisement was admitted
into evidence. This inventory listed the fair market value of the residence as
$531,451, using the 2005 Harris County appraisal District (HCAD) value. Appellee
testified that, in her opinion, the fair market value of the residence was a little less
than the tax-appraised value. Also admitted into evidence was an Agreed Final
Judgment in the McKamies’ suit against HCAD. In that judgment, the parties agreed
that the appraised value and the market value of the residence was $440,000 in 2002
and $450,000 in 2003. 
          The parties each testified regarding their expenditures and debts incurred
during the previous five or six years. Appellant testified that appellee was very
involved in the financial transactions and that they shared responsibility for
maintaining the family’s income and expenditures. Appellee testified that, while she
generally paid the bills and balanced the check register, she was not involved in, and
often did not know about, many of the loans appellant received from financial
institutions and relatives. 
          The trial court, in conclusion of law number 11 (which is actually a finding of
fact), found that appellee’s trial inventory reflected the value of the parties’ assets. 
The court rendered a decree that divided the marital assets and liabilities as proposed
by appellee. Appellee’s proposed division shows a net amount of $460,043 awarded
to appellee and $443,780 awarded to appellant. Thus, appellee received 50.9% and
appellant received 49.1% of the community estate.
DISCUSSION
Standard of Review
          In a decree of divorce, the court shall order a division of the community estate
in a manner that the court deems just and right, having due regard for the rights of
each party. Tex. Fam. Code Ann. § 7.001 (Vernon 2005); Rafferty v. Finstad, 903
S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ denied). In effecting a
just and right division of the community estate, section 7.001 of the Family Code
vests the trial court with broad discretion that will not be reversed on appeal unless
the complaining party shows that the trial court clearly abused its discretion. Murff
v. Murff, 615 S.W.2d 696, 698 (Tex. 1981); Rafferty, 903 S.W.2d at 377. The test of
whether the trial court abused its discretion is whether the court acted arbitrarily or
unreasonably, and without reference to any guiding principles. Turner v. Turner, 47
S.W.3d 761, 763 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent
grounds for asserting error, but are relevant factors in determining whether the trial
court abused its discretion. Dunn v. Dunn, 177 S.W.3d 393, 396 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied) (citing Pickens v. Pickens, 62 S.W.3d
212, 214 (Tex. App.—Dallas 2001, pet. denied)). 
          A trial court may order an unequal division of the community property when
a reasonable basis exists for granting relief. Robles v. Robles, 965 S.W.2d 605, 621
(Tex. App.—Houston [1st Dist.] 1998, pet. denied). The division of property must
not be so disproportionate as to be inequitable, and the circumstances must justify
awarding more than one-half to one party. Patt v. Patt, 689 S.W.2d 505, 507 (Tex.
App.—Houston [1st Dist.] 1985, no writ).
          If the appellant challenges the trial court’s findings of fact in its issues on
appeal, the appellate court will review the legal and factual sufficiency of the
evidence to support the findings in the same manner it reviews a jury’s findings in a
jury trial. Escobar v. Escobar, 728 S.W.2d 474, 475 (Tex. App.—San Antonio 1987,
no writ); State Bar of Tex. v. Roberts, 723 S.W.2d 233, 235 (Tex. App.—Houston [1st
Dist.] 1986, no writ). Unchallenged findings of fact are binding on the court of
appeals “unless the contrary is established as a matter of law, or if there is no
evidence to support a finding.” McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex.
1986). If the appellant challenges the trial court’s conclusions of law, we review
those conclusions de novo and will uphold them on appeal if the decree can be
sustained on any legal theory supported by the evidence. BMC Software Belg. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d 609, 611 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial
court’s conclusions of law for factual sufficiency, but we may review the legal
conclusions drawn from the facts to determine their correctness. BMC Software, 83
S.W.3d at 794. If we determine that a conclusion of law is erroneous, but that the
trial court nevertheless rendered the proper decree, the error does not require reversal. 
Id. 
Value of the residence
          In his third issue, appellant contends that the trial court erred in using the ad
valorem tax value as the fair market value of the residence. Appellant argues that his
testimony that the fair market value of the property was at least $720,000 was the
only evidence of the fair market value. Appellant challenges finding of fact C.6, that
“Reginald admitted that the market value of the marital residence on 15 Warrenton
was $450,000 as of June 30, 2004 as reflected in the Agreed Judgment filed in the
151st District Court. 
          The trial court’s finding is supported by Petitioner’s Exhibit 40, the referenced
Agreed Final Judgment, which is signed as “approved” by appellant. The trial court
did not find that the fair market value of the residence in 2005 was $450,000. 
Presented with the conflicting testimony of appellant and appellee, the trial court
found that the values in appellee’s inventory were correct. For the residence, that was
$531,451. 
          Appellant cites Kuehn v. Kuehn, 594 S.W.2d 158 (Tex. Civ. App.—Houston
[14th Dist.] 1980, no writ), to support his argument that the ad valorem tax value may
not be used to determine the fair market value of real estate. Kuehn states that the
value placed upon real estate for purposes of taxation cannot support a fact finding
even if there is no objection because the evidence is hearsay. Id. at 161. Kuehn was
issued before the adoption of the Texas Rules of Evidence in 1982, to be effective on
September 1, 1983. Since that date, the hearsay rule has provided, “Inadmissible
hearsay admitted without objection shall not be denied probative value merely
because it is hearsay.” Tex. R. Evid. 802. Because appellant did not object to
appellee’s trial inventory, the court could rely on the values of the property as
contained in that inventory. In addition, the court could have relied on the testimony
of appellee that the fair market value of the residence was a little less than the tax-appraised value. 
          Appellant also challenges finding C.5 in which the trial court found that the
parties spent approximately $335,000 on the house remodeling. Appellant testified
at trial that they spent $450,000 for the renovation. He offered no documentation of
the expenditures. Appellee’s spread sheet showing all expenditures was admitted into
evidence. The total costs, as shown on the spread sheet were $337,247. Thus, there
was legally and factually sufficient evidence to support the trial court’s finding. 
          We overrule appellant’s third issue.
Value of other assets and liabilities
          In his fourth issue, appellant contends that the trial court erred in valuing the
other assets and liabilities in dividing the community estate. 
          Use of the ad valorem tax value for the Kansas property. The trial court did
not make a specific finding regarding the value of the Kansas property, but appellee’s
trial inventory listed it at $26,224. The court admitted an exhibit from the Wyandotte
County appraiser’s office, without objection, showing the 2005 value of the property
to be $26,224. The trial court could properly rely on that exhibit to determine the
value of the property. See Tex. R. Evid. 802. 
          Treating $248,000 as loans to appellant’s professional corporation. Appellee
testified that appellant loaned his law practice $248,000 from community funds and
did not repay the loan. Appellant testified that the money was a contribution to the
owner’s equity, which was, at the time of trial, a negative number. 
          Assigning a $25,000 value to the Morgan Stanley profit sharing account. 
Appellee’s exhibit 11, a statement of the Morgan Stanley account showing a total
asset value of $25,085.15 on March 31, 2000, was admitted into evidence without
objection. Appellant testified that he “probably” withdrew that amount, but produced
no documentation of such a withdrawal. In the final decree, the trial court awarded
that account to appellant. 
          Valuing the 2005 Honda Civic EX. Appellant argues that the trial court
assigned a value on $16,160 for the Honda, but that he had an outstanding loan of
$17,000 on the car. The trial court did not make a specific finding regarding the
Honda, but relied on appellee’s inventory, which gave a fair market value of $16,160,
with an “unknown” lien. Appellant’s promissory note on the car was admitted into
evidence, but there was no evidence regarding the current balance on the note. 
          Sale of the Lexus LS 470 and attorney’s fees. Appellant complains that, in
spite of a court order restraining the parties from selling or encumbering any property, 
appellee sold her Lexus SUV for $15,000 when its Blue Book value was $35,000. 
He argues that he should have received $17,000 credit for what should have been his
share of the value of the car. However, the trial court apparently made an exception
for the Lexus, ordering appellee to either pay for the car or get rid of it. 
          Appellee testified that, although she had paid cash for the Lexus, appellant,
without appellee’s knowledge, had used the Lexus as collateral for a $35,000 loan. 
Appellant challenges the trial court’s finding, in C.9, that he took out the loan without
appellee’s knowledge. The court could reasonably believe appellee’s testimony
otherwise. 
          Appellant also complains that the trial court’s division does not account for his
attorney’s fees. However, the decree provides that each party will be responsible for
his or her attorney’s fees. 
          Community debt. Appellant complains that the “overwhelming majority” of
the community debts are assigned to him. These debts include a $10,428 loan from
the Department of Education for one son’s college tuition, the 2003 federal income
taxes, which are $20,000, and a $20,000 loan from appellant’s father. These debts
cannot be considered in isolation, but as a part of the division of the community
estate. 
          College fund. Appellant challenges the trial court’s finding C.12 that appellant
used “$160,000 of the boys’ designated college education funds for unknown and
unexplained reasons.” The check register that was admitted into evidence showed
that two checks had been written for $80,000 to be deposited into each boys’ college
fund. Appellant testified that the checks were not deposited into the funds, but were
used on the house renovation, and that appellee knew that the checks were not
deposited. Appellee testified that she thought that the college fund checks had been
written and learned during the divorce litigation that the checks had not been
negotiated. Thus, there was conflicting testimony on this issue. 
          $575,000 in loans. Appellant challenges the trial court’s finding C.8 that
appellant borrowed from relatives and financial institutions. The findings of fact
include a chart showing nine loans from April 2000 to June 2003 totaling $575,000. 
Most of these loans are from financial institutions, one for $20,000 is from
appellant’s father, and one for $50,000 is from appellant’s mother. Appellant does
not dispute the existence of these debts, but argues that the proceeds of the loans were
used to fund his law practice and to pay for family expenses. He did not specify how
much of the money was used for law practice and how much for the family. 
          Appellee testified that she was not involved in obtaining the loans. She
testified that she may have signed some of the documents, because appellant would
put documents in front of her with tabs showing her where to sign. When she
questioned him about the documents, he would say, “You don’t know what it takes
to run a business and we need money.” 
          Checks were also written on the McKamies’ personal account as loans to
appellant’s law practice. Although the check register entries were sometimes in
appellee’s handwriting, she testified that she did not necessarily write the checks. 
She stated that appellant would sometimes write checks without recording them, he
would tell her what the checks were for, and she would record the information so that
she could balance the check register. 
          Appellant challenges the trial court’s finding B.6 that appellant handled the
vast majority of the financial transactions. In support of this challenge, he refers to
documents signed by appellee, one investment she participated in, her teaching career
as a source of financial support, and her activities such as paying bills and
transferring funds from one account to another to make funds available for bill paying
as evidence that appellee was a full participant in virtually all of the financial
transactions. Appellant’s testimony was controverted by appellee’s testimony that
appellant took out major loans and used their residence and her car as collateral for
some of those loans without her participation or knowledge. 
          Additional challenges to findings of fact and conclusions of law. Appellant
challenges several findings of fact that are not related to the value of assets or
liabilities. Appellant challenges finding C.2 that in 1999 he earned substantial fees
in addition to the $1.3 million fee. Appellant’s own testimony that he had “several”
settlements that were more that $50,000 supports finding C.2. 
          Appellant challenges finding C.11 that he deposited over $500,000 into his
business checking account, but did not repay the community. However, the final
decree does not award the community a reimbursement. Appellant also challenges
finding C.4 that he refinanced the marital residence a mere two years after receiving
the large fee. (He had paid the mortgage in full the year he received the fee.) 
Findings C.11 and C.4 are relevant only for the purpose of apportioning the
community assets. 
          There is both legally and factually sufficient evidence to support each of the
challenged findings of fact in this issue: finding of fact B.6 and C.2, 4, 8, 9, 10, 11,
and 12. We hold that the trial court did not abuse its discretion in valuing the assets
and liabilities of the community. Accordingly, we overrule appellant’s fourth issue.
Just and right division of the community assets
          In his second issue, appellant challenges conclusion of law 7, contending that
the trial court did not make a just and right division of the community property. 
Appellant also challenges conclusion of law 11,


 in which the trial court found that
the value of the assets was reflected in appellee’s inventory. Both parties filed an
inventory and a proposed division of the assets and liabilities, and these documents
were admitted into evidence. The trial court, as fact finder, was entitled to believe all,
some, or none of the evidence presented by the parties. See Hill v. Clayton, 827
S.W.2d 570, 574 (Tex. App.—Corpus Christi 1992, no writ). Thus, the trial court did
not abuse its discretion in making a division of the community property based on
appellee’s inventory. 
          The trial court concluded, in conclusion of law 8, that appellee should receive
a disproportionate division of the property due to appellant’s significant earning
capacity. Appellant argues that the parties’ earnings are not greatly disproportionate. 
The record, which shows appellant’s earnings of 1.3 million in 1999, $377,000 in
2000, $73,000 in 2002, and $111,000 in 2003, does not support appellant’s argument. 
Even in the year of his lowest earnings, appellant made approximately one and one-half times appellee’s salary of $48,000. Nevertheless, the trial court’s division of
property resulted in an award of 50.9% to appellee and 49.1% to appellant, as valued
by appellee’s inventory.


 We hold that this property division is not so
disproportionate as to be inequitable. 
          We overrule appellant’s second issue. 
Exclusion of expert testimony 
          In his fifth issue, appellant contends that the trial court abused its discretion in
excluding the testimony of an expert witness regarding the market value of the home. 
 The trial court did not admit the testimony from appellant’s expert witness because
appellant did not disclose information regarding all of the properties the expert had
considered in estimating the market value of the residence. Appellant contends that
the trial court erred in not admitting the expert testimony because the appellee did not
claim that she was surprised by the expert’s testimony. 
          Section 193.6 of the Texas Rules of Civil Procedure states that evidence may
be excluded if the party fails to “make, amend, or supplement a discovery response.” 
Tex. R. Civ. P. 193.6(a). There is an exception to this rule if the trial court finds that
the improper discovery response does “not unfairly surprise or unfairly prejudice the
other parties.” Tex. R. Civ. P. 193.6(a)(2). However, the “burden of establishing . . .
the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the
evidence or call the witness. A finding of . . . the lack of unfair surprise or unfair
prejudice must be supported by the record.” Tex. R. Civ. P. 193.6(b). Here, the trial
court did not make a finding that appellee would not be unfairly surprised or
prejudiced, and appellant offered no evidence on the issue. Therefore, appellant did
not meet his burden of establishing that appellee was not unfairly surprised. 
          We overrule appellant’s fifth issue. 
CONCLUSION
          We affirm the decree.
 
 
                                                                        Sam Nuchia
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.