TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00018-CV






Rajeev Gupta, Appellant


v.


Anuradha Gupta, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 06-10585, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 Appellant Rajeev Gupta appeals the property division in the trial court's final decree
of divorce dissolving the marriage between him and appellee Anuradha Gupta. In three issues,
Rajeev contends that the trial court erred by (1) awarding specific corporate or business assets to
Anuradha that were legally owned by the parties' family partnership or other corporate entities,
(2) failing to properly value portions of his medical practice, and (3) ordering Rajeev to reimburse
Anuradha for attorney's and professional fees paid prior to the divorce with community funds. We
will affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND Rajeev and Anuradha (1) married on January 3, 1999, and had two children during their
marriage. At the time their marriage was arranged, Rajeev was working as a physician in Giddings,
Texas, and Anuradha had recently emigrated from India. During the course of the marriage, Rajeev
acquired three medical practices in Bastrop, Texas, which he operated under the name Bastrop
County Medical Associates, P.A. (2) He also opened Lone Star Imaging, an imaging center in which
he and Anuradha were fifty-percent partners, and served as a director of several nursing homes and
hospitals. In addition, as they have indicated in their briefing to this Court, the parties created a
family partnership and at least two corporate entities to hold and manage their assets; we note,
however, that neither party apprised the trial court of the existence of these entities during their
testimony, nor did they submit evidence of any partnership agreement or corporate documents.

 In March of 2006, Anuradha filed a petition for divorce alleging cruel treatment and
fraud on the marriage, among other grounds. On these bases, she sought a disproportionate share
of the community estate, as well as attorney's fees. The parties reached a mediated settlement
agreement concerning managing conservatorship and support for the children, while the issues
concerning the division of the community estate were tried to the court. Both sides submitted to the
trial court written proposals for the division of the community estate.

 The bench trial lasted five days. One of the primary disputes concerned the valuation
of Rajeev's medical practice. Anuradha's expert, Elizabeth Schrupp, concluded that Rajeev's
medical practice was worth $1,260,000 on a fair-market-value basis without a marketability
discount, or $1,000,000 with a marketability discount, and that after subtracting his personal
goodwill, the practice was worth $980,000 without a marketability discount, or $780,000 with a
marketability discount. Rajeev's expert, Ken Huff, assessed the fair market value of the practice at
$359,000. Rajeev himself opined that the practice was worth only $100,000 or $150,000. Bound
up in this dispute was a difference of opinion as to how to evaluate the imaging center and what
effect its significant debt service and operating losses should have on the overall valuation of the
medical practice.

 The trial was completed on December 20, 2007. The following month, the trial court
submitted a letter to the parties indicating that it would grant a divorce on the cruelty grounds alleged
by Anuradha and disproportionately divide the estate in her favor.

 The trial court rendered the final decree of divorce on December 17, 2008, almost a
year after the trial had concluded. In its final property division incorporated into the divorce decree,
the trial court awarded Rajeev the marital residence and all of its furnishings, a commercial property
in Bastrop, the funds on deposit in three accounts at First National Bank, his three life insurance
policies, his general partnership interest in Lakeside Hospital, the 2002 Lexus SC430 motor vehicle
"in husband's name," and all personal property and effects subject to his sole control. It further
ordered that Rajeev be awarded:


The Professional Association known as Bastrop County Medical Associates, P.A.,
including but not limited to all furniture, fixtures, machinery, equipment, inventory,
cash, receivables, accounts, goods, and supplies; all personal property used in
connection with the operation of the business; and all rights and privileges, past,
present, or future, arising out of or in connection with the operation of the business.


The Bastrop Imaging Center, L.L.C., including but not limited to all furniture,
fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and
supplies; all personal property used in connection with the operation of the business;
and all rights and privileges, past, present, or future, arising out of or in connection
with the operation of the business, subject to the security agreement attached
hereto.



(Emphasis in original.)

 The trial court ordered that Anuradha be awarded all personal property and effects
subject to her sole control, the funds on deposit in five separate bank accounts, her single life
insurance policy, the parties' 2006 federal income tax refund in the amount of $44,500, her limited
partnership interest in Lakeside Hospital, a Certificate of Deposit held at First National Bank, and
the sum of $260,000 payable by Rajeev according to the terms of the attached promissory note in
order to achieve "an equitable division of the parties' community estate." The trial court further
awarded Anuradha:


The individual retirement accounts, simplified employee pensions, annuities, and
variable annuity life insurance benefits in the wife's name, including but not limited
to [twelve LPL Financial Services accounts].


The 2000 Lexus RX300 motor vehicle in wife's name, together with all prepaid
insurance, keys, and title documents.


 The trial court further found that Anuradha had $15,333.83 in credit card debt, that
Anuradha had incurred attorney's fees totaling $80,546.24, and that Rajeev's attorney's fees totaled
$17,406.62. In keeping with its desire to award Anuradha a disproportionate share of the community
estate, the trial court ordered Rajeev to pay Anuradha's attorney's fees.

 Rajeev now brings this appeal, arguing that the trial court erred by awarding
Anuradha the 2000 Lexus and two of the LPL Financial Services accounts, which were assets of the
business and therefore should have been awarded to him; by accepting the inflated valuation of his
medical practice offered by Anuradha's expert; and by ordering that he should reimburse Anuradha
for attorney's and professional fees paid prior to the divorce using community funds.


STANDARD OF REVIEW

 A trial court has broad discretion in dividing the marital estate, and we presume the
trial court exercised its discretion properly. Murff v. Murff, 615 S.W.2d 696, 698-99 (Tex. 1981). 
In dividing the community estate, the trial court shall order a division of the property that it deems
just and right, having due regard for the rights of each party. Tex. Fam. Code Ann. § 7.001 (West
2006). An appellate court will correct the trial court's division of marital property only when a clear
abuse of discretion has been shown. Murff, 615 S.W.2d at 698; Bell v. Bell, 513 S.W.2d 20, 22 (Tex.
1974). A clear abuse of discretion is shown only if the division of property is manifestly unjust. See
Mann v. Mann, 607 S.W.3d 243, 245 (Tex. 1980). "The party attacking the property division bears
the heavy burden of showing that the trial court's property division was not just and right." Pletcher
v. Goetz, 9 S.W.3d 442, 445 (Tex. App.--Fort Worth 1999, pet. denied) (op. on reh'g).

 The division of the community estate need not be equal, but it should be equitable. 
O'Carolan v. Hopper, 71 S.W.3d 529, 532 (Tex. App.--Austin 2002, no pet.). The trial court's
discretion to divide the community estate is broad, but it is not without limits. Id. The trial court
must have some reasonable basis for an unequal division of the property, see id., considering
evidence of such factors as: (1) fault in breaking up the marriage; (2) the spouses' capacities and
abilities; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative
financial conditions and obligations; (7) disparity of ages; (8) sizes of separate estates; (9) the nature
of the property; and (10) disparity in earning capacities or incomes, see Murff, 615 S.W.2d at 699.

 Under an abuse-of-discretion standard in a family law case, legal and factual
insufficiency are not independent grounds for reversal, but are instead relevant factors in assessing
whether the trial court abused its discretion. Doyle v. Doyle, 955 S.W.2d 478, 479 (Tex.
App.--Austin 1997, no pet.); Mai v. Mai, 853 S.W.2d 615, 618 (Tex. App.--Houston [1st Dist.]
1993, no writ). To determine whether the trial court abused its discretion because the evidence is
legally or factually insufficient to support its decision, we engage in a two-pronged inquiry,
considering (1) whether the trial court had sufficient evidence upon which to exercise its discretion
and (2) whether it erred in its application of that discretion. Zeifman v. Michels, 212 S.W.3d 582,
587 (Tex. App.--Austin 2006, pet. denied); In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.--Fort
Worth 2002, pet. denied). Under the first prong, we apply the traditional sufficiency standards and
then proceed to determine whether, under the second prong, the trial court's decision was arbitrary
or unreasonable. Zeifman, 212 S.W.3d at 587.

 The trial court acts as fact finder in a bench trial and is the sole judge of the credibility
of witnesses. See Murff, 615 S.W.2d at 700. Accordingly, the trial court may consider all the facts
and circumstances in connection with the testimony of each witness and accept or reject all or part
of that testimony; an appellate court may not substitute its judgment for the trial court's assessment
of testimony in a bench trial. See In re W.E.R., 669 S.W.2d 716, 716-17 (Tex. 1984).


DISCUSSION

 In his first issue, Rajeev argues that the trial court erred in awarding Anuradha certain
"corporate assets" in its division of the community estate. Specifically, he argues that the trial court
erred in determining that the 2000 Lexus RX300 vehicle was in Anuradha's name, when it was in
fact owned by his medical practice, Bastrop County Medical Associates, P.A. Accordingly, he
asserts, the trial court erred in awarding the vehicle to Anuradha because it should have been
awarded to him along with all other fixtures, equipment, inventory, and assets of the business. 
Similarly, Rajeev argues that the trial court erred in awarding two LPL Financial Services accounts
to Anuradha because those accounts actually belonged to the RA Gupta Family Partnership and
RA Gupta Enterprise, LLC.

 Anuradha responds on appeal that such error, if any, is harmless and was waived on
the grounds that (1) both parties' proposed property divisions requested that the cars be awarded as
the trial court ordered; (2) neither party submitted evidence of any corporate or partnership
ownership of community assets, let alone evidence of the existence of the partnership or corporate
entities; (3) Rajeev's proposed property division referred to a "global 'investment portfolio' without
delineating that the twelve accounts therein included variously: college § 529 accounts, rollover
IRAs, trust accounts for the children, annuities, simplified pension plans, 401(k), LLC, and
Partnership accounts"; and (4) no objection was made or testimony was offered putting the trial court
on notice "that there should have been more specificity in awards of corporate accounts." We agree.

 In view of the entire record, we conclude that Rajeev has not demonstrated that the
trial court abused its discretion in awarding these assets to Anuradha. At no point during the trial
proceedings did Rajeev argue that either the Lexus or the LPL Financial Services accounts were
corporate business assets that should not have been included in the division of the marital property. 
On the contrary, he included these and other assets--including the commercial lot and the Lexus that
was awarded to him--in his proposed property division, representing to the trial court that they were
community property assets. Having failed to apprise the trial court that these assets were anything
but community property, or even inform the court of the existence of the corporate or partnership
entities, Rajeev cannot now obtain reversal of the property division on this basis, which he failed to
assert either by a motion for new trial or motion to amend or correct the judgment. See Tex. R. App.
P. 33.1(a). We overrule Rajeev's first issue.

 In his second issue, Rajeev complains that the trial court, in relying on the testimony
of Anuradha's expert, Elizabeth Schrupp, failed "to take into account the value, or lack thereof, of
portions of the medical practice." He argues that although Schrupp "presented estimates of value
for the medical practice based upon legitimate methodologies," her conclusions were "corrupted with
subtle and sometimes insupportable assumptions or assertions of fact." On appeal, he takes issue
with the following: Schrupp's failure to compare Rajeev's rural medical practice to other rural
practices in central Texas; her failure to visit Rajeev's medical practice, interview his staff, or
examine his equipment; her erroneous classification of his practice as a "specialty medical practice,"
instead of a "general physician" office; and, most importantly, her failure to consider or factor in the
losses and expenses of the imaging center.

 Initially, we note that Rajeev does not characterize his issue on appeal as a challenge
to the sufficiency of the evidence supporting the trial court's implied findings regarding the value
of the medical practice, (3) nor does he frame it as a challenge to the reliability of the expert's
testimony. In substance, however, the first several "deficiencies" that he mentions in his brief are
indeed challenges to the underlying methodology, technique, or foundational data that Schrupp used
in formulating her opinion of the value, and therefore his failure to object at trial results in the waiver
of these complaints. See Coastal Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227,
233 (Tex. 2004). As to his argument that Schrupp failed to properly evaluate the imaging
center, which we construe as a challenge to the sufficiency of the evidence supporting the
trial court's determination of the value of the medical practice, we hold that the evidence is legally
and factually sufficient.

 Schrupp testified extensively and without objection regarding her valuation of
Rajeev's medical practice, providing a detailed analysis of her methods and the figures on which she
relied. With respect to the imaging center, she testified that she analyzed the financial information
and "corrected some bookkeeping errors" and inaccurate balance sheets that contradicted the income
statements she was given in an effort to show its "true financial condition." (4) In addition to her
primary report explaining her valuation of the medical practice, Schrupp submitted a separate report
explaining her analysis of the imaging center and dedicated a section of her rebuttal to the report of
Rajeev's expert, Huff, highlighting the errors that he had made in evaluating the imaging center. (5) 
Ultimately, Schrupp concluded that although the imaging center was currently losing "maybe a
couple thousand in net right now," she expected that it would be breaking even within a few years.

 In making its determination of a just and right division of the marital estate, the trial
court was the sole judge of the witnesses' credibility and the weight to be given their testimony. 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). The trial court was free to accept or
reject the testimony of each expert in whole or in part and to resolve any inconsistencies in the
testimony. Id. at 697. There is no abuse of discretion if the trial court's decision is based on
conflicting evidence. In re Barber, 982 S.W.2d 364, 366 (Tex. 1998). Thus, to the extent that the
trial court accepted Schrupp's testimony and rejected that of Rajeev and Huff, it acted within its
discretion in making a just and right division of the marital estate.

 Further, in a divorce proceeding, the ultimate and controlling issue is whether the trial
court divided the property in a "just and right manner" pursuant to the family code. See Tex. Fam.
Code Ann. § 7.001; Limbaugh v. Limbaugh, 71 S.W.3d 1, 7 (Tex. App.--Waco 2002, no pet.);
Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex. App.--Houston [1st Dist.] 1995, writ denied). How
the trial court valued specific property is not an ultimate issue. Rafferty, 903 S.W.2d at 376; Finch
v. Finch, 825 S.W.2d 218, 221 (Tex. App.--Houston [1st Dist.] 1992, no writ). One who complains
of the way the trial court divided the community property must be able to show from the evidence
in the record that the overall division is so unjust and unfair as to constitute an abuse of discretion. 
Finch, 825 S.W.2d at 221. Although Rajeev has argued that his medical practice should have been
valued at less than $780,000, he has not demonstrated that this allegedly inflated value resulted in
a manifestly unjust division of the marital estate. Nor does he challenge the substantial evidence
supporting the trial court's decision to award a disproportionate share of the property in favor of
Anuradha. (6) Because there is probative and substantive evidence in the record that supports the trial
court's order, we conclude that the trial court did not abuse its discretion in dividing the marital
estate. See Zeifman, 212 S.W.3d at 587. We overrule Rajeev's second issue.

 In his third issue, Rajeev argues that the trial court erred by adjudicating that he
should reimburse Anuradha for attorney's and professional fees that were paid prior to the divorce
using community funds. It is undisputed that Anuradha paid approximately $80,000 for attorney's
fees and related expenses with community funds prior to the divorce. Rajeev does not challenge the
reasonableness or necessity of this amount. He does argue, however, that the trial court erred by
ordering him to reimburse Anuradha for the entire $80,000 amount, rather than just his community
share of these expenses. By ordering him to pay the entire amount, Rajeev urges, the trial court's
divorce decree does not reflect the 60/40 division that the trial court actually intended.

 As an initial matter, we note that Rajeev's brief fails to cite any authority in support
of his third issue. An appellate issue unsupported by citation to legal authority presents nothing for
the appellate court to review and waives a complaint of any alleged error. See General Servs.
Comm'n v. Little-Tex. Insulation Co., 39 S.W.3d 591, 598 n.1 (Tex. 2001). Moreover, it does not
appear that Rajeev raised any complaint about the attorney's fee award at trial; he may not, therefore,
raise it for the first time on appeal. Tex. R. App. P. 33.1; see In re B.L.D., 113 S.W.3d 340, 349
(Tex. 2003) (failure to raise complaint at trial waives review of complaint on appeal).

 Even if we considered the complaint raised in Rajeev's third issue, he has still not
shown that the trial court clearly abused its discretion in ordering him to reimburse Anuradha's
attorney's fees. In making this argument, he relies on a letter that the trial court submitted to the
parties after trial, but before judgment, indicating that it would grant the divorce on the ground of
cruel treatment and providing its estimation of the value of the community assets. The letter
concluded with the following "recap" illustrating how the court planned to divide the property:


Value of Assets to Wife 1,166,185.25

 Less Liabilities 15,333.83

 Net to Wife 1,150,851.42 (Approximately 60%)


Value of Assets to Husband 1,162,812.66

 Less Liabilities[*] 357,952.86

 Net to Husband 804,859.80 (Approximately 40%)



* Liabilities to Husband consist of the 260,000 Note payable to Wife as well as both
parties' attorney's fees.


 A pre-judgment letter to the parties "is not competent evidence of the trial court's
basis for judgment," and the statements contained therein do not constitute fact findings. Cherokee
Water Co. v. Gregg County Appraisal Dist., 801 S.W.2d 872, 878 (Tex. 1990) (observing that trial
court "could have disregarded the evidence at the time judgment was actually signed"); Mondragon
v. Austin, 954 S.W.2d 191, 193 (Tex. App.--Austin 1997, pet. denied) (pre-judgment letter "cannot
constitute findings of fact and conclusions of law"); see also Gulf States Utils. Cos. v. Low,
79 S.W.3d 561, 566 (Tex. 2002) (appellate court should review judgment "that can be rendered from
the pleadings, evidence, and verdict," not based on letter from trial court). Here, the trial court was
not bound to render judgment effectuating a "60/40 split" of the community estate merely because
it had indicated that it might do so in its letter.

 Thus, while Rajeev may indeed be correct that the trial court's order giving Anuradha
a "double award" for her attorney's fees caused the actual division of property to deviate from a
60/40 split, he has neither argued nor established that this resulted in an unjust division of the overall
marital estate in light of the trial court's judgment granting Anuradha a disproportionate share of the
community estate. Cf. Eikenhorst v. Eikenhorst, 746 S.W.2d 882, 890 (Tex. App.--Houston [1st
Dist.] 1988, no writ) (rejecting appellant's claim for reimbursement of attorney's fees previously
paid out of community estate and affirming further fee award in favor of appellee; "Although it is
not clear from the record in this case that the trial court took into consideration the prior payment
of $14,000 in attorney's fees when it made a division of the property, it is also not clear from the
court's findings of fact and conclusions of law or in the trial court's judgment that it did not take the
payment into consideration in making its division."). We overrule Rajeev's third issue on appeal. (7)


CONCLUSION

 Having overruled Rajeev's appellate issues, we affirm the trial court's judgment.



 

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Filed: June 24, 2010

Affirmed

1. To avoid confusion, we will refer to the parties by their first names.
2. According to the valuation report prepared by Rajeev's expert witness, the practice was
incorporated on April 1, 1999; its sole shareholder is Dr. Rajeev Gupta; it "specializes in internal
medicine"; and, besides Dr. Gupta, it employs one other physician along with physician assistants
and other medical office personnel.
3. Neither party requested--and the trial court did not make--findings of fact as to the value
of any specific property. On appeal, Rajeev asserts that the trial court adopted Anuradha's expert's
opinion of value based on the letter that the court submitted to the parties after the trial. In that letter,
the court indicated that, of the $1,162,812.66 in community assets that it intended to award Rajeev,
$780,000 was attributable to the medical practice. It further noted that the value attributable to the
imaging center was "-0-."
4. Schrupp testified regarding some of the adjustments that she made in her analysis of the
imaging center:



The first thing I did was to--looking at the other statements I noticed that all the
revenue wasn't booked so I added that. Then the second thing I did was I added
accounts receivable because we know accounts receivable will kick in. And you also
have to remove prior receivables out of the revenue. So it's a wash on the revenue
side, but what it does is it adds $132,000 to the book value because it's an asset. 
Again, I got that off the subsequent months' collections.


The other thing I noted that his fixed assets, he didn't record the full value of the
imaging machine. And I don't know why, but according to Weis it's--the imaging
machine is 1.2 million and not 1 million 52 thousand. So I increased that as well to
show the full amount, which ties to the contract.


I then basically got rid of the tax accumulated depreciation and recorded GAAP using
a 15 percent salvage value, which is common, what everybody does. . . .


 

Schrupp also explained that the advantage of the imaging center from a financial standpoint is not
only in the revenues it generates, but in the benefit it brings in to his medical practice:



In this center--a lot of doctors get these centers because--we call them loss leaders
in stores. For example, Wal-Mart will go come in and get this great baby doll that's
only $5 and everybody else is selling it for 10. Chances are, they paid 8 for it. So
they're losing money, but they don't care because you're coming to their store. . . .


A lot of doctors have these imaging centers to break even because they can utilize
it in their medical practice, as well as from the hospital. And so a lot of times
they don't cash flow, and especially in a smaller town it's not going to significantly
cash flow.
5. Schrupp testified as follows regarding the imaging center:



 Q. And did you also do some analysis or--did you analyze the imaging center
also?


A. I looked at the information that you sent me and kind of corrected some
bookkeeping errors.


Q. But did you do a valuation for the imaging center?


A. It's not really a valuation as much as just analyzing it and correcting it to
show the true financial condition.


. . . .


A. The next thing is the book value and financial condition, and that's out of his
report. And he looked at it. He attached one year balance sheet. Well, most
recognized authorities suggest that you have at least five, three years of
balance sheets at a minimum. Well, he had one year. And if you look at the
balance sheet he used it didn't even tie to the tax return. As a matter of fact,
it had debts in there that were related to a whole different legal entity, which,
obviously, made the company appear to be worth less.


Q. You're talking about the imaging center?


A. Right. He had the imaging center look like a payment or a down payment
recorded as a debt on his books of the company. So he didn't even do a
proper analysis of that. He did show income statements, but he did not
actually show the balance sheets.
6. The trial court heard evidence tending to show that Rajeev was at fault for the break-up of
the marriage, was more educated than Anuradha, and had significantly greater earning capacity and
business opportunities. See Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981). There was also
legally and factually sufficient evidence to support the trial court's finding that Rajeev was guilty
of cruel treatment, the ground on which the trial court granted the divorce in favor of Anuradha.
7. In explaining the context for his third issue, Rajeev makes a passing reference to the trial
court's alleged reliance on improper, unsworn testimony from Anuradha's attorney and erroneous
designation of the balance of a certificate of deposit that it intended to award to Anuradha. Because
his brief does not characterize these as appellate issues or seek reversal of the judgment on these
bases, however, we will not address such issues.